## BEN MIXON v. THE STATE.

*No. 2842.  Decided February 1.*

**1.  Theft—Evidence.**—See the statement of the case for evidence held to have been improperly admitted on a trial for theft because hearsay, and, in view of the other proof, calculated to prejudice the accused.

**2.  Same—Charge of the Court.**—The first count of the indictment alleged the ownership of the stolen property in one Porter, and the second count in some person unknown to the grand jury. To warrant a conviction under the first count it devolved upon the State to prove the ownership in Porter, and under the second count, to prove that the ownership was unknown to the grand jury, and that they used reasonable diligence to ascertain the fact of ownership. See the opinion for a charge of the court *held* erroneous in itself, and incorrect because it does not present the law applicable to the two counts separately. But note that being objected to for the first time on appeal, the question whether it should operate reversal is not decided.

APPEAL from the District Court of Burleson. Tried below before Hon. C. C. Garrett.

The conviction was for the theft of a cow, and the penalty assessed was a term of two years in the penitentiary.

State witnesses R. U. Jones and W. T. Newman testified, in substance, that on the morning of August 15, 1888, they found the freshly removed hide of a cow secreted in a thicket near the East Yegua, in the edge of Burleson County. It was the hide of a red cow with white flanks. The ears had been cut off and the brand cut out. They did not find the place where the cow had been killed. Jones further testified that a few days afterwards he saw a place in the edge of Lee County, about 300 yards distant from where he had seen the hide in Burleson County, where an animal of the cattle kind had been recently killed. The remains of a paunch were there. A few days afterwards he saw a cow's head at Malloy's.

John Price testified for the State that he was present when the cow was killed, and helped butcher it. Defendant was present, and roped the cow at the request of W. E. Richardson, who killed the animal. That beef was delivered to Roe Malloy, a negro, who was to pay witness's mother some boards. Witness did not understand the nature of the transaction whereby Malloy was to get the beef, and his, witness's, mother the boards. Richardson pointed out the cow and defendant roped her at his request. Richardson then killed the animal with an axe, and Richardson, defendant, and witness skinned her. Witness then went and notified Malloy

that the beef was ready for him. Malloy sent other negroes after the beef. They asked if they should take the hide. Richardson replied in the negative, and said that he was going to sell the hide for money to buy coffee. Richardson then took the hide on his horse, and he, witness, and defendant rode off. After crossing the Yegua, Richardson dropped behind, and when he next overtook witness and defendant he did not have the hide. The hide was not mutilated when witness last saw it. Witness knew that the brand on the animal killed was M P. If there was a bar between the M and P, making M H P connected, the witness did not observe it. Defendant and witness went with Richardson to kill the cow at Richardson's request. Defendant never claimed an interest in that ·cow, so far as the witness knew.

Thomas Porter testified for the State that in 1887 he owned a red and white pided cow, branded M H P connected, that ranged near the Swope ·crossing of the Yegua, in Burleson and Lee counties. About September 13, 1888, James Moak bought the said cow from the witness. Prior to that time witness had not consented for any person to take her. He had no cow branded M P.

Arch Skinner testified for the State that he saw the hide found in the thicket on the Yegua. The ears had been cut off and the brand cut out. On the day after the hide was found the defendant remarked to witness that the finding of the hide seemed to create something of a "stir," and asked, "Why don't the people come to me or Richardson about it?" He further said that it was Richardson's cow, and was branded X D—Richardson's brand; that he and Richardson killed it; that he cut out the brand, intending to tack it up at home, but that forgetting it he left it in his saddle pockets until it got to stinking, when he threw it away. He advised witness to see Richardson about it. Witness did so, and Richardson said that the cow belonged to him. It was proved for the State that James Moak was a constant companion and intimate friend of defendant. The State closed.

Mrs. Price testified for the defense that in August, 1888, Richardson owed her $25. He told her that he would have Roe Malloy make and deliver to her some boards to go on the debt. If defendant had any interest in the boards witness did not know it. Witness never got the boards. Richardson was witness's brother. She did not know his present whereabouts.

L. R. Hilliard testified for the State, in rebuttal, that about a week after the cow was killed J. B. Moak, Ed. Ellis, the half brother of defendant, and Claude Shaffer, the husband of defendant's half sister, passed the house of Clark Hilliard where witness then was, on their way to John Price's house. Witness followed them to and into the house. After a time Moak remarked, "Well, this is not business. Lets do what we came for. If we are going to talk to John Price it is time we were

at it." Price, Moak, Ellis, and Shaffer then went into the yard, where they talked for some time. Witness afterwards went into the yard and heard Moak ask Price if he had been to town and made complaint. Price replied that he had. Moak said to the parties with him, "If he has been to town there is no use of our carrying him down yonder this morning." This is the evidence involved in the first ruling of this court.

*W. K. Homan* and *E. G. Banks,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—On the trial, over defendant's objections, the State was permitted to prove by the witness Hilliard a portion of a conversation between Price, Moak, Ellis, and Shaffer, in relation to the theft of the animal involved in this case. Defendant was not present at said conversation, and the same occurred about one week after said theft. Exceptions to the admission of this testimony appear in the statement of facts, and are, we think, sufficiently full and specific to demand consideration. In our opinion said testimony was inadmissible. It was hearsay, and while considered by itself it does not appear to be material, or in any manner prejudicial to the defendant, yet when viewed with reference to the other evidence in the case, it seems to us to be material, and calculated to injuriously affect the rights of the defendant. We hold therefore that in the admission of said testimony material error was committed.

There are two counts in the indictment. The first charges that the animal stolen was the property of Thomas Porter, and the second that it was the property of a person to the grand jurors unknown.

By the fourth paragraph of the charge the jury are instructed as follows: "There are two counts in the indictment, in one of which it is alleged that the animal was the property of Thomas Porter, and in the other it is alleged to be the property of some person to the grand jurors unknown. You are charged that if you should believe from the evidence that the animal was stolen, as charged, it will not be necessary for you to believe that the animal was the property of Thomas Porter, but you must believe that the animal was fraudulently taken, and taken in every other respect as alleged, as the property of some person unknown to the grand jurors, with the fraudulent intent on the part of the defendant to deprive the owner of the animal, and to appropriate it to the use and benefit of some other person than the owner."

To warrant a conviction under the first count in the indictment it was certainly necessary that the evidence should prove beyond a reasonable doubt that the animal was the property of Thomas Porter, as alleged in said count.

To warrant a conviction under the second count it was essential that the State should prove that the ownership of the animal was unknown to the grand jury, and that they used reasonable diligence to ascertain the fact of ownership.    Willson's Crim. Stats., sec. 1297.

We think the paragraph of the charge above quoted is erroneous in that it does not state the law applicable to the two counts separately, and does not state the law correctly.    No exceptions were reserved to the charge, nor was any error therein complained of in the motion for a new trial, and the error above noticed is for the first time presented on appeal.    It is unnecessary that we should determine whether or not under these circumstances said error in the charge would of itself demand a reversal of the conviction.    We have called attention to the error in view of another trial of the cause.

Because of the error of admitting in evidence the testimony of the witness Hilliard, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Hurt, J., absent.